UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY,<br>    *Plaintiff*<br><br>v.<br><br>RAYMOND FERRONE,<br>    *Defendant,*<br><br>and<br><br>RAYMOND FERRONE,<br>    *Third-Party Plaintiff,*<br><br>v.<br><br>SHENKEL INSURANCE AGENCY, INC.<br>    *Third-Party Defendant.* | C.A. NO. 04-12144 GAO |

## COMPLAINT OF THIRD-PARTY PLAINTIFF RAYMOND FERRONE

The Defendant and Third-Party Plaintiff Raymond Ferrone brings this third-party action against his agent, Shenkel Insurance Agency, Inc., on grounds that its negligence in handling a request to amend the navigational limits of the insurance policy at issue in these proceedings has damaged Mr. Ferrone by jeopardizing his coverage and forcing him to litigate the question of coverage.

### PARTIES

1.  Defendant and Third-Party Plaintiff Raymond Ferrone ("Ferrone") is a United States citizen and a resident of Massachusetts.

2.  Third-Party Defendant Shenkel Insurance Agency, Inc. ("Shenkel") is a

Massachusetts Corporation with a principal place of business at 1017 Turnpike Street, Canton, Massachusetts.

## JURISDICTION AND VENUE

3. The original complaint in this action was filed pursuant to Title 28 of the United States Code, § 2201 et seq, seeking resolution of a present controversy concerning a contract of marine insurance.

4. This action is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 of the United States Code, § 1333.

5. This Court has jurisdiction over the subject matter of this third-party action pursuant to Federal Rule of Civil Procedure 14(c).

6. Venue lies within the District of Massachusetts as this cause arises out of a policy of marine insurance procured for Ferrone by Shenkel.

## FACTUAL ALLEGATIONS

7. On or about June 20, 2003, Ferrone retained Shenkel as his agent in securing insurance for a newly purchased 2000 37' Active Thunder water craft power boat (the "Boat").

8. Shenkel had served as Ferrone's insurance agent on prior occasions and the two had an ongoing business relationship.

9. Shenkel held himself out as having certain expertise in advising clients on the procurement of insurance policies and facilitating the procurement of the same.

10. Ferrone relied on Shenkel and its representatives for expertise and advice in the area of insurance.

11. Ferrone relied on Shenkel and its representatives to take all actions necessary on his behalf to work with insurers in order to ensure Ferrone's insurance coverage was in force and

in good standing.

12. On June 20, 2003, Ferrone, with Shenkel's assistance, completed a Yacht & High Performance Insurance Application seeking to insure the Boat.

13. Shenkel submitted the application on Ferrone's behalf to Global Marine Insurance Agency, of Traverse City, Michigan ("Global"), who was the agent for the plaintiff Markel American Insurance Company, Inc. ("Markel").

14. The application was accepted and a policy was issued to Ferrone by Markel through its agent Global, with an effective date of June 20, 2003, Policy No. RP2004856 (the "Policy").

15. A copy of the Policy was returned to Shenkel and to Ferrone.

16. The Policy covers damage to the Boat for up to $1,000,000 of property damage.

17. The Policy was issued subject to a navigational limitation of the U.S. coastal waters of the Atlantic Ocean not more than 25 miles off the coast between Eastport, ME and Block Island, RI.

18. On or about October 1, 2003, Ferrone notified Shenkel that he intended to transport the Boat to Florida for the winter.

19. Ferrone asked Shenkel to obtain from Markel an amendment to the navigational limitation of the Policy so that he could operate the Boat off the coast of Florida and preserve his coverage under the Policy.

20. Ferrone notified Shenkel of the date that he was transporting the Boat, as well as the area in Florida where he intended to operate it.

21. Shenkel, through one of its employees or representatives, informed Ferrone that it would obtain this amendment on Ferrone's behalf.

22. Shenkel, through one of its employees or representatives, informed Ferrone that these types of amendments to navigation limitations were routinely granted by marine insurers.

23. Shenkel, through one of its employees or representatives, informed Ferrone that he could safely transport the Boat to Florida and operate it off the Florida coast.

24. Relying upon Shenkel's assurance that the necessary amendment would be obtained, Ferrone transported the Boat to Florida.

25. Pleading in the alternative to Ferrone's Answers to ¶¶ 7 and 14 of the Complaint, and ¶¶ 11, 13, and 15 of the Counterclaim, Shenkel either failed to request the necessary amendment to the navigational limitation of the Policy from Markel or Global, or made such request but failed to follow through on its communication(s) by clarifying with Markel or Global whether the amendment had or had not been granted when Shenkel did not receive a prompt response to its communications.

26. In either case, Shenkel failed to adequately document its communications with Markel or Global to reasonably demonstrate that it had made this request on Ferrone's behalf and obtained a definitive answer.

27. Shenkel received no response of any kind from Markel or Global with regard to its request for the amendment, either granting the request, denying the request, or otherwise.

28. Shenkel did not notify Ferrone that it had failed to ensure that it had obtained the necessary amendment to the navigational limitations of the Policy.

29. Shenkel was aware that Ferrone intended to operate the Boat off the coast of Florida beyond the navigational limitation of the original Policy.

30. At all relevant times Shenkel knew that it had lead Ferrone to understand that it would obtain the requested amendment.

31. Shenkel allowed Ferrone to labor under the misapprehension that the navigational limits of the Policy had, in fact, been amended, when Shenkel itself did not know whether or not this was the case.

32. Pleading in the alternative to Ferrone's Answers to ¶¶ 7 and 14 of the Complaint, and ¶¶ 11, 13, and 15 of the Counterclaim, Shenkel failed to obtain the requested amendment and further failed to notify Ferrone that he lacked insurance coverage under the Policy to operate the Boat off the coast of Florida.

33. Ferrone eventually proceeded to navigate the Boat off the coast of Florida, operating under the reasonable belief that the amendment had been obtained, and in reliance on Shenkel's assurance that it would obtain the amendment.

34. On April 25, 2004, Ferrone suffered a loss to the Boat when a fire broke out in its engine compartment (the "Incident").

35. At the time of the Incident Ferrone was operating the Boat approximately 1 to 2 miles South of Miami Cut in Biscayne Bay, off the coast of Florida.

36. The location of the Incident was squarely within the area covered by the requested amendment to the navigational limitation of the Policy, which was to extend as far South as the waters off of Key West, Florida.

37. On or about May 7, 2004, Ferrone filed a claim of loss with the Markel.

38. On or about July 29, 2004, Markel denied coverage for Ferrone's loss on the grounds that the Incident occurred outside of the navigational limitation of the Policy and that the cause of loss was attributable to "gradual deterioration" of an engine component.

39. Consistent with Ferrone's position in the Answer and Counterclaim, Markel's stated basis for denying coverage on grounds that the loss was attributable to the "gradual

deterioration" of an engine component is without basis in fact.

40.  The engine in question was new, with a mere forty six (46) hours of usage as of the time of the Incident.

41.  Shenkel's failure to adequately document its request for the necessary amendment to the Policy, its failure to notify Ferrone that it could not verify that it had or had not obtained the amendment, has damaged Ferrone.

42.  In the alternative, Shenkel's failure to obtain the necessary amendment to the Policy and its failure to notify Ferrone that it had failed to obtain such amendment, has damaged Ferrone.

43.  Ferrone's damages include, but are in no way limited to, the loss of coverage under the Policy, costs associated with the storage of the Boat, and substantial legal expenses which he has incurred as a direct result of the aforementioned acts and/or omissions of Shenkel including fees incurred in the course of these proceedings.

## **COUNT ONE**

### **(Negligence)**

44.  Ferrone restates and realleges herein the allegations contained in each of the foregoing paragraphs of this Third-Party Complaint.

45.  Shenkel owed Ferrone a duty of reasonable care in acting as Ferrone's insurance agent with regard to the Policy, including but not limited to the request for an amendment to the navigational limitation of the Policy.

46.  Shenkel breached its duty of reasonable care to Ferrone as described above.

47.  As a direct, proximate and foreseeable result of Shenkel's failure to exercise due care in the performance of the services described above, Ferrone has been damaged.

48.  Ferrone's damages include, but are not limited to, the loss of insurance coverage

under the Policy, the attorneys' fees incurred as a result of this dispute with Markel, Global and Shenkel, and the cost associated with of storing the Boat while it awaits repairs.

## JURY DEMAND

The Third-Party Plaintiff Ferrone demands a trial by jury on all claims and issues so triable.

WHEREFORE, Ferrone respectfully requests that this Court:

(A)   award Ferrone money damages against Shenkel;

(B)   award Ferrone his reasonable attorneys fees; and

(C)   grant such other and further relief as it deems proper.

> Respectfully submitted,
> **DEFENDANT,**
> **RAYMOND FERRONE,**
> By his attorneys,
>
> _/s/ Paul L. Feldman_
> Paul L. Feldman/BBO #162205
> Joshua S. Grossman/BBO #643939
> Davis, Malm & D'Agostine, P.C.
> One Boston Place
> Boston, MA 02108
> (617) 367-2500

Dated: August 8, 2005

368592v.3